UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **STEVEN CURTIS RICE,** individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| *Plaintiff,* | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **PRIORITY 1 LENDING, LLC,** a Michigan company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Steven Curtis Rice ("Plaintiff Rice" or "Rice") brings this Class Action Complaint and Demand for Jury Trial against Defendant Priority 1 Lending, LLC, ("Defendant" or "Priority 1 Lending") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Rice, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

## PARTIES

1.     Plaintiff Rice is a resident of Sylvania, Georgia.

2.     Defendant Priority 1 Lending is a company registered in Michigan, with its headquarters located in Livonia, Michigan. Defendant Priority 1 Lending conducts business throughout this District and throughout the US, including Indiana.

## JURISDICTION AND VENUE

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

2

6.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.     According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in August 2023 alone, at a rate of 163.8 million per day. www.robocallindex.com (last visited September 10, 2023).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.   Defendant Priority 1 Lending provides mortgage-related services including loan refinancing for consumers.[3]

14.   Defendant Priority 1 Lending places telemarketing cold calls to consumers who have recently had their credit checked, as per Plaintiff's experience, despite the fact that those consumers have never provided consent to receive telemarketing calls from Priority 1 Lending.

15.   In a job posting for Defendant's mortgage loan originator, cold calling is specifically mentioned as a job requirement under sales skills:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://extremeloans.com/about-us/

**About the job**

- Relevant experience: Looking for candidates who have a proven track record of success in the mortgage lending industry. This may include experience working as a loan officer or loan partner.
- Strong sales skills: Mortgage loan officers need to be able to sell their products and services to potential clients. Look for candidates who have a strong sales background, and who are comfortable with prospecting, cold-calling, and building relationships.
- Excellent communication skills: Mortgage loan officers need to be able to communicate complex financial information to clients in a clear and concise manner. Look for candidates who are articulate, personable, and have strong interpersonal skills.
- Attention to detail: Mortgage lending involves a lot of paperwork and documentation. Look for candidates who are detail-oriented and organized, and who have a track record of producing accurate work.
- Knowledge of industry regulations: The mortgage lending industry is highly regulated, so it's important to hire candidates who are knowledgeable about industry regulations and compliance requirements.
- Technology skills: Mortgage lending has become increasingly digital, so it's important to hire candidates who are comfortable using technology to process applications, manage client information, and communicate with clients. [4]

16.     Some of the calls that Priority 1 Lending are making are to consumers that registered their phone numbers on the DNC specifically to avoid such telemarketing calls, as per Plaintiff's experience.

17.     To make matters worse, Priority 1 Lending lacks a sufficient do not call system to ensure that a consumer who notifies Priority 1 Lending to stop calling, will be removed from their calling list, as per Plaintiff's experience.

18.     Consumers have posted complaints online alleging that Priority 1 Lending acquired their contact information through a credit bureau:

- "[5]Priority One is a lender who buys your personal information from credit bureaus. They use offshore telemarketing companies to harass you and call you. I will NEVER give this type of lender my business. This approach is a terrible way to pursue business and should be illegal."[6]

---

[4] https://www.linkedin.com/jobs/view/mortgage-loan-originator-at-priority-1-lending-3500037393/

[5] https://www.google.com/search?q=%22priority+1+lending

[6]

- "I am looking for a local mortgage company, as soon as they put my credit score, I had received more than 50 phone calls. Priority 1was one of them."[7]

- "There is no way that this company is using legitimate practices to scout business.My parents applied for a mortgage through another lender. I received a call from Priority 1 referencing my elderly parents' mortgage application and asking for them by name. I haven't lived with them for 20 years and we do not share phone numbers, etc.How did Priority 1 get info about their application? I assume by trolling credit reports. How did they link my parents to my number, and why are they calling me? That part seems shady at best - definitely some sloppy data mining at work here.At the very least this aggressive robocall marketing is unwelcome. At the worst, Priority 1 misrepresented themselves, claiming that my parents had spoken to them for an application, which is completely untrue, and potentially scandalous. They may have been trying to obtain information akin to phishing. Whatever they are, this kind of practice is NOT what a legitimate business should do."[8]

19.    Many consumers have posted complaints online about unsolicited calls that they received from Defendant Priority 1 Lending, including reports about consumers who received unsolicited calls after asking for the calls to stop, including:

- "This company seems very suspicious at best and a scam at worst. I received a call from out of the blue from ***** at Priority 1 Lending, perhaps because I had applied for a mortgage with other lenders recently…"[9]

- "This is a predatory company in my opinion. Somehow they found out that I applied for a mortgage on a new build and they refuse to take no for an answer. I have repeated informed whomever calls my cell phone that I am not interested and they continue to call me. Funny thing is they do not care that they are calling me on my hospital phone. I have not done business with this organization and I will not ever do so. Now

---

[7] *Id.*

[8] https://www.bbb.org/us/mi/livonia/profile/consumer-finance-companies/priority-1-lending-0332-90038703/customer-reviews

[9] Id.

the only question I have is ***how do I get them to stop calling and harassing me?*** It becomes harassment due to being call over 5 times and every time ***I tell them no and to take me off their list but they refuse to honor my request.***"[10] (emphasis added)

- "***How many times do I have to say no? I have received 20+ calls from this company*** about 'accepting an offer with one of our competitors'. Each time I have either said no or hung up. More recently I've just hung up because saying no only leads to them desperately attempting to change your mind.I also have blocked every number they have called me from, leading them to call from a different number. This is beyond ridiculous and some of these calls come late at night (6, 7, 8PM).I cannot properly express how little interest I have in ever doing business with a company like this. I'd rather pay more to a competitor that doesn't constantly hound me."[11] (emphasis added)

- "This company has called me 7 times the past 2 days. Twice they called be before 7am. Never have I encountered such a rude and aggressive company. I've never once inquired that I'm interested in doing business with this company as they got my number from some list. I would think twice before doing business with this company. I believe 7 calls in 2 days constitutes as telephone harassment. Surely I cannot be the only one they've done this to. If you are in the same situation as me, feel free to message me as I'm considering filing a complaint to the bbb and possibly suing them for harassment"[12]

- "Was berated on the phone by their 'loan specialist' despite them having reached out to me without my consent, spam calling me multiple times."[13]

- "I've been receiving numerous calls from the telemarketers sourced by this company. When I called to escalate a complaint, I was asked by 'Anna' if the telemarketers sounded 'Indian' and she declined to escalate me to a supervisor and wouldn't answer how they had gotten my number seeing as I don't have a mortgage and 'was not in their system'."[14]

---

[10] Id.

[11] Id.

[12] https://www.yelp.com/biz/priority-1-lending-livonia

[13] https://www.google.com/search?q=%22priority+1+lending

[14] Id.

- "Have not done business with them but......***no matter how many times I tell them no, they still call***. Very very annoying"[15] (emphasis added)

- "This Victoria lady from the company keeps cold calling and make up some stuff about I got a loan with their competitor. ***Would rudely hang up when I told them 'You got the wrong informa....' and [click] then call again next week*** and the same unprofessional action. Think I am on the do not call reg... so I may need to take action on this."[16] (emphasis added)

- "This company has called me, relentlessly, for weeks straight. I'm at the point where I'm actually keeping them on the line longer because I want to waste their time. They've called me a minimum of 30 times in the past two weeks. I think it's closer to 50, ~ 6 or so times a day"[17]

- "I believe this organization obtained my name, phone number, and who knows what else via fraud or from a source that acquired it by fraud. ***Company refuses to stop contacting me to offer a mortgage***."[18] (emphasis added)

- "***repeated solicitation calls regardless of asking to be removed from their list multiple times***. I did not ask to be contacted by them."[19] (emphasis added)

20.    In response to these calls, Plaintiff Rice brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

---

[15] Id.
[16] Id.
[17] Id.
[18] Id.
[19] Id.

## PLAINTIFF RICE'S ALLEGATIONS

21.     Plaintiff Rice registered his cell phone number on the DNC on August 23, 2013.

22.     Plaintiff Rice uses his cell phone number for personal use only as one would use a landline telephone number in a home.

23.     The calls that Plaintiff Rice received from Defendant Priority 1 Lending were all received more than 31 days after Plaintiff registered his cell phone number on the DNC.

24.     Toward the middle of June 2023, Plaintiff Rice sought a loan from his bank and the bank performed a credit report.

25.     Plaintiff Rice did not fill out any documentation online.

26.     As soon as his credit was pulled by the bank, Plaintiff Rice began receiving unsolicited telemarketing calls to his cell phone regarding loans and refinancing from telemarketers trying to solicit him to take a loan or refinance through them.

27.     On June 20, 2023 at 9:54 AM, Plaintiff Rice received an unsolicited call from Priority 1 Lending to his cell phone, from 404-282-9792.

28.     When Plaintiff Rice answered this call, an employee identified the company name as Priority Lending 1. The purpose of the call was to solicit mortgage refinancing services.

29.    Plaintiff Rice told the employee that he is not interested and asked for his phone number to be removed from the Priority 1 Lending call list.

30.    Despite his stop request, Plaintiff Rice received additional calls from Defendant Priority 1 Lending to his cell phone number, all of which were answered and all of which were soliciting mortgage/refinancing services:

- June 20, 2023 at 1:37 PM from 404-282-9792;

- June 21, 2023 at 9:18 AM from 404-282-9792;

- June 22, 2023 at 9:20 AM from 404-282-9792;

- June 23, 2023 at 9:26 AM from 404-282-9792; and

- June 27, 2023 at 9:57 AM from 404-282-9792.

31.    Plaintiff Rice did tell Priority 1 Lending to stop calling his cell phone number more than once, but the calls continued.

32.    Plaintiff Rice confirmed that 404-282-9792 is used by Priority 1 Lending to place telemarketing calls. As of September 10, 2023, this phone number is no longer in service.[20]

33.    Plaintiff Rice has never done business with Priority 1 Lending and has never given them consent to call his phone number.

34.    The unauthorized solicitation telephone calls that Plaintiff Rice received from or on behalf of Defendant Priority 1 Lending have harmed Plaintiff in

---

[20] Based on an investigation conducted by Plaintiff's attorneys

the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

35.    Seeking redress for these injuries, Plaintiff Rice, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

36.    Plaintiff Rice brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Priority 1 Lending called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Priority 1 Lending called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

37.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Rice anticipates the need to amend the Class definition following appropriate discovery.

38.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

39.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c)    whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether members of the Classes are entitled to treble damages based
on the willfulness of Defendant's conduct.

40.     **Adequate Representation**: Plaintiff Rice will fairly and adequately
represent and protect the interests of the Classes, and has retained counsel competent
and experienced in class actions. Plaintiff Rice has no interests antagonistic to those
of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Rice
and his counsel are committed to vigorously prosecuting this action on behalf of the
members of the Classes, and have the financial resources to do so. Neither Plaintiff
Rice nor his counsel have any interest adverse to the Classes.

41.     **Appropriateness**: This class action is also appropriate for certification
because the Defendant has acted or refused to act on grounds generally applicable
to the Classes and as a whole, thereby requiring the Court's imposition of uniform
relief to ensure compatible standards of conduct toward the members of the Classes
and making final class-wide injunctive relief appropriate. Defendant's business
practices apply to and affect the members of the Classes uniformly, and Plaintiff's
challenge of those practices hinges on Defendant's conduct with respect to the
Classes as wholes, not on facts or law applicable only to Plaintiff Rice. Additionally,
the damages suffered by individual members of the Classes will likely be small
relative to the burden and expense of individual prosecution of the complex litigation
necessitated by Defendant's actions. Thus, it would be virtually impossible for the

members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rice and the Do Not Call Registry Class)**

42.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

43.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

44.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

45.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rice

and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

46.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Rice and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

47.     As a result of Defendant's conduct as alleged herein, Plaintiff Rice and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

48.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rice and the Internal Do Not Call Class)**

49.     Plaintiff repeats and realleges paragraphs 1 through 41 of this Complaint and incorporates them by reference herein.

50.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any

call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a

16

telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

51.     Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

52.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

53.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of

Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Rice requests a jury trial.

Respectfully Submitted,

**STEVEN CURTIS RICE**, individually and
on behalf of all others similarly situated,

DATED this 10th day of October, 2023.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

George T. Blackmore* (P76942)
Apex Law
32900 Five Mile Road
Livonia, MI 48154
734-888-8399
Fax: 734-418-3686
Email: gblackmore@apexgrouplaw.com

*Attorneys for Plaintiff and the putative
Classes*

*\*Local counsel*